## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TRACY MARROW,      :
      **Plaintiff**      :
            :      **No. 1:18-cv-00931**
    **v.**      :
            :      **(Judge Rambo)**
**COMMONWEALTH OF**      :
**PENNSYLVANIA, et al.,**      :
      **Defendants**      :

## MEMORANDUM

## I.   BACKGROUND

Pro se Plaintiff, Tracy Marrow ("Plaintiff"), an inmate formerly housed at

the State Correctional Institution, Rockview, Pennsylvania ("SCI-Rockview"),

initiated the above-captioned action on April 2, 2018, by filing a complaint in the

Court of Common Pleas of Centre County, Pennsylvania.  (Doc. No. 1-2.)

Defendants filed a notice of removal on May 2, 2018 (Doc. No. 1), and a motion to

dismiss on May 9, 2018 (Doc. No. 3).

Plaintiff alleges that on July 11, 2017, while at SCI-Rockview, he and other

inmates were subject to a group strip search by Defendants for possible

contraband.  (Doc. No. 1-2 ¶¶ 27, 36.)  Plaintiff alleges that three unnamed male

correctional officers, under the supervision of Defendant Hardy, conducted these

strip searches while Plaintiff and other inmates stood behind a four foot wall, and

while female staff members were present.  (Id. ¶¶ 28, 29.)  Plaintiff claims that the

group strip search violated "established mandatory" DOC policy that requires

inmates "to be stripped individually" (id. at ¶¶ 23, 26), and not in front of

surveillance cameras and officers of the opposite sex (id. ¶¶ 24, 25).

On July 12, 2017, Plaintiff initiated a grievance related to the strip search.

(Id. ¶ 30.)  His grievance was ultimately denied at the final stage of the grievance

process.  (Id. ¶ 34.)  Plaintiff seeks monetary damages for feeling humiliated,

dehumanized, and emotionally distressed as a result of the strip search.  (Id. ¶¶ 36,

37, 54.)  Defendants have filed a brief in support of their motion to dismiss (Doc.

No. 5), and Plaintiff has filed an oppositional brief (Doc. No. 9).  Accordingly, this

matter is ripe for disposition.

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must

accept as true all factual allegations in the complaint and all reasonable inferences

that can be drawn from them, viewed in the light most favorable to the plaintiff.

See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  The

Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550

U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and

Iqbal, pleading requirements have shifted to a "more heightened form of pleading."
See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent
dismissal, all civil complaints must set out "sufficient factual matter" to show that
the claim is facially plausible.  Id.  The plausibility standard requires more than a
mere possibility that the defendant is liable for the alleged misconduct.  As the
Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the
court to infer more than the mere possibility of misconduct, the complaint has
alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal,
556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly
and Iqbal, the United States Court of Appeals for the Third Circuit has identified
the following steps a district court must take when determining the sufficiency of a
complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to
state a claim; (2) identify any conclusory allegations contained in the complaint
"not entitled" to the assumption of truth; and (3) determine whether any "well-
pleaded factual allegations" contained in the complaint "plausibly give rise to an
entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d
Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)).

In the context of pro se prisoner litigation specifically, the court must be mindful that a document filed pro se is "to be liberally construed." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## B. Civil Rights Statute, 42 U.S.C. § 1983

In order to state a viable claim under § 1983, a plaintiff must plead (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990); Richardson v. Min Sec Cos., No. 3:cv-08-1312, 2008 WL 5412866, at *1 (M.D. Pa. Dec. 29, 2008).

## III. DISCUSSION

### A. Official Capacity Claims & Claims Against the Commonwealth & the DOC

Plaintiff has brought suit against Defendants in their "individual and official capacities." (Doc. No. 1-2.) However, a state official sued in his or her official capacity is not a "person" for purposes of § 1983 when a plaintiff seeks monetary damages, as the Supreme Court has not construed § 1983 as an abrogation of the states' Eleventh Amendment immunity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 63-71 (1989). Will precludes actions for damages against state officials acting in their official capacities. Id. at 63-71  However, the state's immunity is not shared by state officers to the extent that the suit seeks prospective injunctive or declaratory relief or seeks damages from the officers in their individual

capacities.  Ex parte Young, 209 U.S. 123 (1908); see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635 (2002).  Consequently, the Court will dismiss all claims asserted against Defendants in their official capacities with prejudice in which Plaintiff seeks monetary damages.

Additionally, Plaintiff names as Defendants the Commonwealth of Pennsylvania and the DOC.  (Doc. No. 1-2.)  However, these entities are not subject to suit under 42 U.S.C. § 1983 and will be dismissed with prejudice.  See Smith v. Samuels, No. 3:12-cv-524, 2013 WL 5176742, at *4 (M.D. Pa. Sept. 12, 2013) ("Courts have repeatedly recognized that a prison or correctional facility is not a person for purposes of civil rights liability.") Will, 491 U.S at 64 (holding that a State is not a "person[]" under § 1983); Quern v. Jordan, 440 U.S. 332 (1979) (The Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity, see 42 P.C.S.A. § 8421(b), and 42 U.S.C. § 1983 does not override a state's Eleventh Amendment immunity); Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000); Beattie v. Dep't of Corr. SCI-Mahanoy, No. 1:cv-08-00622, 2009 WL 533051, at *6 (M.D. Pa. Mar. 3, 2009); Davis v. Pa. Bd. of Prob. And Parole, Civ. No. 05-330J, 2006 WL 3308440, at *5 (W.D. Pa. Oct. 13, 2006).

## B.    Personal Involvement / Respondeat Superior

Local government units and supervisors typically are not liable under section 1983 solely on the theory of <u>respondeat superior</u> or vicarious liability.  <u>See</u> <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v. Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658, 690-91 (1978).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of <u>respondeat superior</u>.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207-08 (3d Cir. 1988); <u>see also</u> <u>Sutton v. Rasheed</u>, 323 F.3d 236, 249 (3d Cir. 2003) (citing <u>Rode</u>.)

Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  <u>Rode</u>, 845 F.2d at 1207.  As set forth in <u>Rode</u>,

> A defendant in a civil rights action must have personal involvement in the alleged wrongs…. [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or knowledge and acquiescence, however, must be made with appropriate particularity.

<u>Id</u>. at 1207.

With respect to Defendant Varner, the "Chief Grievance Officer" (Doc. No. 1-2 ¶ 13), the complaint contains no allegations of personal involvement against her.  This form of pleading is patently inadequate since it fails to allege facts

against Varner identifying how she engaged in any misconduct or how and when she was involved in any alleged wrongdoing.  See Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007).

As for Defendants Garman and Vance, it is apparent that Plaintiff seeks to hold both Defendants liable under the theory of respondeat superior.  However, the complaint contains no specific assertions that either of these Defendants had any personal involvement in the purported violations of Plaintiff's rights.  Rather, the claims asserted against these Defendants are premised upon their respective supervisory positions at SCI-Rockview.  Moreover, to the extent Plaintiff seeks to hold Garman and Vance liable for conduct related to the processing of Plaintiff's grievances, this claim necessarily fails.  The filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation.  See Pressley v. Beard, 266 F. App'x. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do

not establish the involvement of those officials and administrators in the underlying constitutional deprivation); Ramos v. Pa. Dep't of Corr., Civ. No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that prison officials' failure to respond to inmate's grievance does not state a constitutional claim), aff'd, 142 F.3d 430 (3d Cir. 1998) (table).

As the Court stated in Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam), a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action. Permitting supervisory liability where a defendant, after being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement. Rode, 845 F.2d at 1207; see also Greenwaldt v. Coughlin, 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold

that official liable for the alleged violations."); <u>Rivera v. Goord</u>, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000) (allegations that inmate wrote to prison officials and was ignored insufficient to hold those officials liable under section 1983).

Based upon an application of the above standards, Plaintiff's allegations are insufficient to satisfy the personal involvement standard against Defendants Garman, Vance, and Varner as their involvement was limited to maintaining a supervisory position at SCI-Rockview or to review of Plaintiff's grievances. Consequently, Plaintiff has failed to establish personal involvement for purposes of Section 1983 liability, and Defendants Garman, Vance, and Varner will be dismissed as a party to this action.

**C.      Damages Barred by the Prisoner Litigation Reform Act**

The Prison Litigation Reform Act of 1995 ("PLRA"), provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). The term "sexual act" is defined as contact between the penis and vulva or anus; contact between the mouth, and penis, vulva or anus; the penetration of the anal or genital opening of another; or the intentional touching of the genitalia of another person. 18 U.S.C. §

2246(2). The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (citation omitted). In order to recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate less than significant, but more than a de minimis physical injury. See 42 U.S.C. § 1997e(e); see also Mitchell v. Horn, 318 F.3d 523, 535 (3d Cir. 2003).

The allegations within the Plaintiff's complaint fail to demonstrate either a physical injury resulting from the strip search or anything constituting a "sexual act" under 18 U.S.C. § 2246(2). Because Plaintiff has not suffered a physical injury or a commission of a sexual act as a result of the strip search, Plaintiff is unable to recover monetary damages and this claim will be dismissed. See Rager v. Delbalso, No. 3:15-cv-2343, 2016 WL 2610019, at *2 (M.D. Pa. May 6, 2016).

**D.    Strip Search**

A prisoner's challenge to a strip search may be cognizable under 42 U.S.C. § 1983 through the Fourth or Eighth Amendments. See Williamson v. Garman, No. 3:15-cv-1797, 2017 WL 2702539, at *4 (M.D. Pa. June 22, 2017) (citing Bell v. Wolfish, 441 U.S. 520, 558-60 (1979)). To raise a Fourth Amendment claim, the prisoner must allege that the strip search was unreasonable. See Payton v. Vaughn,

798 F. Supp. 258, 261-62 (E.D. Pa. 1992).  Where a prisoner alleges that the strip

search was conducted in a physical abusive manner, the Eighth Amendment

applies.  See Jordan v. Cicchi, 428 F. App'x 195, 199-200 (3d Cir. 2011)

(explaining that an excessive force claim arising from a strip search may proceed

under either the Fourth Amendment or the Eighth Amendment, but the latter is

"the primary source of protection after an individual's conviction"); Robinson v.

Ricci, Civ. No. 09-2023, 2012 WL 1067909, at *17 n.6 (D.N.J. Mar. 29, 2012)

(stating that, in addition to a possible Fourth Amendment violation, the "Eighth

Amendment may be implicated where the strip search or visual body cavity search

was conducted in a brutish and unreasonable manner").

While a strip search may constitute a "significant intrusion on an

individual's privacy," see United States v. Whitted, 541 F.3d 480, 486 (3d Cir.

2008), in the prison or detention facility setting, where officials conduct searches

in a reasonable manner to maintain security and to prevent the introduction of

contraband or weapons in the facility, strip searches do not violate the Fourth

Amendment.  See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington,

621 F.3d 296, 309-11 (3d Cir. 2010); Milhouse v. Arbasak, 373 F. App'x 135, 137

(holding that prison officials may conduct visual body cavity searches whenever an

inmate enters and exits his cell in the RHU, if performed in a reasonable manner).

Further, strip searches can be conducted by prison officials without probable cause. Jones v. Luzerne Cty. Corr. Facility, No. 3:10-cv-0359, 2010 WL 3338835, at *8 (M.D. Pa. Aug. 23, 2010) ("[I]nmates do not have a right to be free from strip searches.") (citing Bell, 441 U.S. at 558). Additionally, allegations that a strip search was degrading or embarrassing also fail to state a constitutional violation. See Milhouse, 373 F. App'x at 137 (body cavity strip "searches, even if embarrassing and humiliating, do not violate the constitution").

In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm. See Hudson v. McMillian, 503 U.S. 1, 7 (1992). Under Hudson, the absence of a serious injury to the inmate is relevant to this Court's inquiry, but does not end it. Id. However, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimus uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10 (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)).

Plaintiff's allegations that he was subjected to a humiliating and degrading strip search for the purpose of detecting contraband, fails to allege either a valid Fourth or Eighth Amendment violation. In <u>Milhouse</u>, the Third Circuit stated:

> Millhouse alleges that prison officials routinely subjected him to strip searches when entering and exiting his cell in the SHU and that, during one search, a guard "focused on his chest and penis while other employees were present." The Supreme Court has held that prison officials may conduct visual body cavity searches in a reasonable manner . . . Assuming the truth of Millhouse's allegations, the searches, even if embarrassing and humiliating, do not violate the constitution.

<u>Milhouse</u>, 373 F. App'x at 137 (citations omitted). Similarly, the Court finds that Plaintiff fails to allege facts from which it can be concluded that Defendants went beyond a reasonable strip search or used unnecessary force during the strip search. It was reasonable for the correctional officers to perform a strip search in light of the legitimate penological goal of maintaining prison security and checking for contraband or dangerous items. The overall manner in which the strip search was conducted did not violate Plaintiff's constitutional rights, even if in the presence of female officers. <u>See</u> <u>Bros. v. Lawrence Cty. Prison Bd.</u>, Civ. No. 06-1285, 2008 WL 146828, at *9 (W.D. Pa Jan 14, 2008) (providing that "a mere violation of state law, assuming that there is a state law or its equivalent, prohibiting cross

gender strip searches, without more is insufficient to state a claim upon which relief can be granted under Section 1983").

Moreover, assuming, <u>arguendo</u>, a violation of prison policy, a one-time violation of an internal policy does not automatically rise to the level of a constitutional violation. "[A] prison policy manual does not have the force of law and does not rise to the level of a constitutional violation." <u>Atwell v. Lavan</u>, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2008) (<u>citing</u> <u>Mercy Catholic Med. Ctr. v. Thompson</u>, 380 F.3d 142, 154 (3d Cir. 2004)). The Third Circuit has clearly stated that "agency interpretive guidelines 'do not rise to the level of a regulation and do not have the effect of law.'" <u>Mercy Catholic Med. Ctr.</u>, 380 F.3d at 155 (citation omitted).

As the complaint does not allege that Defendants conducted the search in a physical abusive fashion or with excessive force, Plaintiff has also failed to state an Eight Amendment claim. As such, the conduct complained of fails to rise to the level of a constitutional violation cognizable under Section 1983 and these claims will be dismissed.

### E.    Verbal and Sexual Harassment

Plaintiff contends that the strip search constituted sexual harassment. (Doc. No. 1-2 at 9.) The use of words, no matter how violent or harsh, do not amount to

a violation of the prisoner's civil rights by the officer. Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (concluding that verbal harassment by threatening to hang an inmate is not sufficient to state a constitutional deprivation under § 1983); Johnson v. Glick, 481 F.2d 1028, 1033 n. 7 (2d Cir. 1973); see also Lewis v. Wetzel, 153 F. Supp. 2d 678 (M.D. Pa. 2015); Hawkins v. Brooks, 694 F. Supp. 2d 434 (W.D. Pa. 2010); MacLean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995). Simple verbal harassment, standing alone, does not constitute cruel and unusual punishment. DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000).

"To prevail on a constitutional claim of sexual harassment, an inmate must . . . prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997). "Courts of appeals have held that sexual harassment in the absence of contact or touching does not establish excessive and unprovoked pain infliction." Chambliss v. Jones, Civ. No. 3:14-2435, 2015 WL 328064, at *3 (M.D. Pa. Jan. 26, 2015) (citing Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000) (acknowledging the presence of an Eighth Amendment violation when an inmate endures verbal sexual harassment from prison guards plus physical sexual assault or threats of physical sexual assault); DeWalt, 224 F.3d at 612 (noting that verbal

sexual harassment without accompanying physical contact is not enough to state a claim for Eighth Amendment violation); <u>Murray v. U.S. Bureau of Prisons</u>, 106 F.3d 401 (6th Cir. 1997) (finding that offensive remarks regarding a transsexual prisoner's appearance, lifestyle, and presumed sexual preference do not state an Eighth Amendment claim); <u>Morales v. Mackalm</u>, 278 F.3d 126, 129 (2d Cir. 2002) (concluding that a demand for sex in front of other female staff does not rise to the level of an Eighth Amendment violation); <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (holding that severe verbal sexual harassment and intimidation are not sufficient to state a claim under the Eighth Amendment)

Plaintiff's allegations fail to rise to the level of an Eighth Amendment violation. Plaintiff does not allege any direct physical contact and or pain as a result of the alleged sexual harassment. Neither does Plaintiff allege that any Defendant acted with a sufficiently culpable state of mind. As such, any verbal and sexual harassment claim is not cognizable and will be dismissed.

### F.    Due Process

Defendants move to dismiss Plaintiff's Fifth Amendment due process claim. While Plaintiff's complaint does not set forth whether he is making a claim of procedural or substantive due process, or both, under either analysis, Plaintiff's due process claims will be dismissed for failure to state a claim upon which relief may

be granted.  First, while Plaintiff alleges a Fifth Amendment due process violation, the Court notes that Plaintiff is in state custody, not federal custody.  Accordingly, to the extent a due process claim is alleged, the Fourteenth Amendment provides the applicable avenue in which Plaintiff would set forth a due process claim.[1]

Conducting a procedural due process analysis involves a two-step inquiry: "the first question to be asked is whether the complaining party has a protected liberty or property interest within the contemplation of the Due Process clause and, if so, the second question to be asked is whether the process afforded the complaining party comported with constitutional requirements."  Bros., 2008 WL 146828, at *10 (citing Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000)).  The Third Circuit has held that "[w]hen the complained of conduct is 'random and unauthorized' (so that state authorities cannot predict when such unsanctioned deprivations will occur), however, the 'very nature of the deprivation ma[kes] predeprivation process impossible.'  In such situations, postdeprivation process is all that is due."  Brown v. Muhlenberg Twp., 269 F.3d 205, 213 (3d Cir. 2001).

---

[1] The Fifth Amendment's due process clause only protects against federal government action, while the Fourteenth Amendment applies to State action.  See Propert v. District of Columbia, 948 F.2d 1327, 1330 n. 5 (D.C. Cir. 1991) (citing Bolling v. Sharpe, 347 U.S. 497, 499 (1954)); Ruckman v. Lakas, No. 2:17-cv-0384, 2017 WL 6406883, at *2 (W.D. Pa. Dec. 15, 2017).  The Fifth Amendment provides that no person "shall be deprived of life, liberty, or property, without due process of law. . . ." and the Fourteenth Amendment provides that "no State shall . . . deprive any person of life, liberty, or property, without due process of law."  The same analysis that applies to a substantive due process claim under the Fourteenth Amendment applies to a substantive due process claim under the Fifth Amendment. Piechowicz v. U.S., 885 F.2d 1207, 1214 n. 9 (4th Cir.1989).

Here, the nature of the alleged deprivation, the strip search, "renders a pre-deprivation hearing an impossibility due to the randomness of the Defendants' actions." Bros., 2008 WL 146828, at *10. "Moreover, as a matter of law, it cannot be said that the random act of guards engaging in unauthorized cross gender strip searches in alleged violation of state law constitutes an atypical and significant hardship within the meaning of" Sandin v. O'Connor, 515 U.S. 472 (1995). Id. (stating that even if Plaintiff was subjected to a strip search in the presence of females, the allegations fail to state a claim because such a strip search does not, as a matter of law, impose an atypical and significant hardship in relation to the ordinary incidents of prison life as required under Sandin in order to constitute a liberty interest"). Therefore, even if a procedural due process challenge could be used to attack such random acts, "the mere exposure to such random acts, . . . cannot, as a matter of law, constitute a hardship that can be called atypical." Id.; see also McGill v. Czerniak, 83 F.3d 427 (9th Cir. 1996) (stating that Plaintiff's "Fourteenth Amendment due process rights were not violated because the prison's failure to adhere to regulations governing inmate searches did not present the type of atypical and significant deprivation that might conceivably create a liberty interest"); Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) ("[T]here is no federal constitutional liberty interest in having state officers follow state law or

prison officials follow prison regulations."); Drummer v. Luttrell, 75 F. Supp. 2d 796 (W.D. Tenn. 1999) (holding that strip-search of inmate as part of disciplinary procedure did not support inmate's § 1983 action against corrections officials alleging due process violations, since officials' actions did not impose atypical and significant hardship upon inmate).

To the extent that Plaintiff seeks to raise a substantive due process claim, such claims must be dismissed as this Court finds that they are barred by the doctrine set forth in Albright v. Oliver, 510 U.S. 266 (1994) (plurality), and Graham v. Connor, 490 U.S. 386 (1989). As the Supreme Court has observed in Albright, it "has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Albright, 510 U.S. at 271-272. As a result, the availability of claims under substantive due process have been limited to those which are not covered by the legal tests and standards under other amendments. Cty. of Sacramento v. Lewis, 523 U.S. 833 (1998). As described by the Supreme Court, this limitation on substantive due process claims is as follows:

> if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision and not under the rubric of substantive due process.

Id. at 843.

Here, the Court finds that Plaintiff's claims are covered under either the

Fourth or Eighth Amendment standards.  Accordingly, Plaintiff does not have an

additional cause of action under the Fourteenth Amendment's more open-ended

due process clause standard.  Consequently, Plaintiff's substantive due process

clause claims will be dismissed for failure to state a claim upon which relief may

be granted.[2]

### G.     State Law Claims

Having dismissed all federal constitutional claims, the Court must now

decide whether it should exercise its supplemental jurisdiction over the remaining

state-law claims pursuant to 28 U.S.C. § 1367.  The issue of whether to exercise

supplemental jurisdiction is a matter within this Court's discretion.  Indeed, where,

as here, a district court has dismissed all claims over which it has original

jurisdiction, the Court may decline to exercise supplemental jurisdiction over any

remaining state-law claims.  28 U.S.C. § 1367(c)(3); see also Dozier v. Dep't of

Corr., No. 1:12-cv-00838, 2013 WL 6631621, at *8 (M.D. Pa. Dec. 17, 2013)

("Where a district court has original jurisdiction pursuant to 42 U.S.C. § 1983 over

federal claims and supplemental jurisdiction over state claims pursuant to 28

---

[2] While Defendants also argue that they are entitled to qualified immunity with regards to the strip search, the Court need not address this argument given that the Court is dismissing Plaintiff's claims for failure to state a claim upon which relief may be granted.

U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.") (citing 28 U.S.C. § 1367(c)(3)).

In exercising its discretion, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)); see also Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) ("'[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" (quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)) (emphasis in original).

In the interests of judicial economy, convenience, and fairness to the parties, the Court will exercise supplemental jurisdiction over the remaining state-law claims. To the extent that Plaintiff seeks damages under the Pennsylvania Constitution, the Court will dismiss this claim for damages. "The prevailing view is that Pennsylvania does not recognize a private right of action for damages in a suit alleging violation[s] of the Pennsylvania Constitution." Gary v. Braddock

22

Cemetery, 517 F.3d 195, 207 n.4 (3d Cir. 2008); see Dillon v. Homeowner's

Select, 957 A.2d 772, 780 n.11 (Pa. Super. Ct. 2008) (quoting Jones v. City of

Phila, 890 A.2d 118, 1208 (Pa. Commw. Ct. 2006), appeal denied, 589 Pa. 741

(Pa. 2006) ("To date, neither Pennsylvania statutory authority, nor appellate case

law has authorized the award of monetary damages for a violation of the

Pennsylvania Constitution.").  Accordingly, Plaintiff's claims for damages under

the Pennsylvania Constitution fail as a matter of law and will be dismissed.  See

Real v. Dunkle, No. 3:11-cv-2071, 2014 WL 7335039, at *8-9 (M.D. Pa. Dec. 19,

2014); Stockham Interests, LLC v. Borough of Morrisville, Civ. No. 08-3431,

2008 WL 4889023, at *10 (E.D. Pa. Nov. 12, 2008) (holding that "there is no

private cause of action for damages arising from violations of the Pennsylvania

Constitution").

Finally, to the extent that Plaintiff alleges a negligence claim against

Defendants who were acting within the scope of their duty, the Court will dismiss

this claim as it is barred by sovereign immunity against state actors under 42

Pa.C.S.A. § 8522(b).  See Freeman v. Miller, 2011 WL 4591974, at *14 (M.D. Pa.

Sept. 30, 2011) (dismissing IIED and negligence claims against DOC Defendants

because the Pennsylvania state legislature did not specifically waive immunity

with respect to these types of state law claims); Real 2014 WL 7335039, at *9

23

(same); <u>Iverson v. Flowers</u>, Civ. No. 12-1897, 2014 WL4923173, at *7 (M.D. Pa. Sept. 30, 2014) (stating that "negligence and the intentional infliction of emotion[al] distress . . .are barred by Pennsylvania's sovereign immunity statute" where defendants "were acting within the scope of their duty").

## IV.    LEAVE TO AMEND

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient.  <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).  The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." <u>Id.</u>  The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim.  <u>In re NAHC, Inc. Sec. Litig.</u>, 306 F.3d 1314, 1332 (3d Cir. 2002).

Based on the foregoing, the Court finds that affording Plaintiff an opportunity to amend would be futile.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Doc. No. 3), will be granted and this case will be closed.  An appropriate Order follows.


         s/Sylvia H. Rambo
         SYLVIA H. RAMBO
         United States District Judge

Dated: October 15, 2018